IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARPENTERS HEALTH AND WELFARE FUND OF PHILADELPHIA AND VICINITY et al., <br><br> Plaintiffs, <br><br> v. <br><br> MANAGEMENT RESOURCE SYSTEMS, INC. and DOUGLAS W. MARION, <br><br> Defendants. | CIVIL ACTION <br> NO. 14-07097 |

PAPPERT, J.                                                                                     MAY 19, 2015

## MEMORANDUM

Management Resource Systems, Inc. ("MRS") and Douglas W. Marion ("Marion") (collectively "Defendants")[1] have filed a motion to dismiss the complaint filed by Plaintiffs.[2] Defendants contend that they are not signatories to and cannot otherwise be bound by the collective bargaining agreement Plaintiffs seek to enforce. For the reasons stated below, the motion is granted.

### I.     *Factual and Procedural Background*

On August 25, 1997, Marion signed, on behalf of MRS, an Assent Letter ("1997 Assent Letter") agreeing to be bound by a collective bargaining agreement in effect at that time between

---

[1] MRS is identified in the complaint as a corporation engaged in the construction of commercial buildings and Marion is identified in the complaint as an "owner, officer, agent or managing agent" of MRS. (Compl. ¶¶ 11, 12.) Defendants clarify in their motion to dismiss that "MRS is a general contractor that performs construction projects nationwide and specializes in constructing locations for national retailers" and Marion "is MRS' Vice-President and is a shareholder." (Defs.' Mot. Dismiss 4.)

[2] Plaintiffs are Carpenters Health and Welfare Fund of Philadelphia and Vicinity, Carpenters Pension and Annuity Fund of Philadelphia and Vicinity, Carpenters Savings Fund of Philadelphia and Vicinity, Carpenters Joint Apprentice Committee, Carpenters Political Action Committee of Philadelphia and Vicinity, Carpenters International Training Fund, Edward Coryell, Interior Finish Contractors Association of Delaware Valley Industry Advancement Program, and Metropolitan Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America.

1

the Interior Finish Contractors Association of Delaware Valley ("IFCA"), a third party multiemployer bargaining unit, and Plaintiff Metropolitan Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America ("Union") ("the 1997-2001 CBA"). (Compl. Ex. 1, Letter of Assent.)  Plaintiffs assert that by signing this letter, Defendants also agreed to be bound by a collective bargaining agreement between the IFCA and the Union that became effective on May 1, 2012 and expired on April 30, 2015 ("the 2012-2015 CBA").[3] (*See* Compl. Ex. 1, Art. 1.)  Under this agreement, all signatory employers must permit, upon request, the inspection and copying of "any and all records . . . pertaining to compensation paid to employees, hours worked by employees, monies withheld from employees for taxes paid on account of employees, and all other records relevant to, and of assistance in determining the Employer's obligations hereunder to make payments. . . ." (*Id*. at Ex. 1, Art. 19.)

Plaintiffs contend that MRS failed to make required contributions to the Funds[4] for the period of January 1, 2012 through the present and seek to audit MRS to determine the extent of the deficiencies. (*Id*. ¶¶ 16, 18.)  Between July 28, 2014 and September 3, 2014, Plaintiffs sent MRS three letters requesting access to MRS' books and records to conduct the audit.  (*Id*. at Ex. 2.)  Defendants "failed to comply with the audit requests, refused to provide the Plaintiffs with

---

[3]     Plaintiffs also allege, without description or supporting factual allegations, that Defendants are bound by certain trust agreements.  (Compl. ¶ 14.)  To the extent the alleged trust agreements are separate from the 2012-2015 CBA, Plaintiffs have not attached the agreements to the complaint.

[4]     Plaintiffs Carpenters Health and Welfare Fund of Philadelphia and Vicinity, Carpenters Pension and Annuity Fund of Philadelphia and Vicinity, Carpenters Savings Fund of Philadelphia and Vicinity, Carpenters Joint Apprentice Committee and the Carpenters International Training Fund are trust funds established pursuant to 29 U.S.C. § 186(c)(5) the Employee Retirement Income Security Act of 1974 ("ERISA") and they are "multiemployer plans" and "employee benefit plans" within the meaning of 29 U.S.C. § 1002(37), (1), (2), and (3) of ERISA.  They are collectively referred to as "the Funds."  (*See* Compl. ¶ 4.)  Plaintiff Edward Coryell is the trustee and fiduciary of the Funds, the Chairman of the Carpenters Political Action Committee ("PAC"), and Executive Secretary of the Union.  (*Id.* ¶ 9.)  Coryell is authorized to bring this action on behalf of the Funds, the Apprentice Committee, the PAC, and the Union.  (*Id.*)

any relevant business records and have otherwise concealed and obstructed discovery." (*Id.* ¶ 18.)

Plaintiffs filed this lawsuit on December 16, 2014, seeking injunctive relief requiring Defendants to submit to an audit, as well as judgment in the amount found to be due and owing after the audit, together with liquidated damages, interests, and costs. Plaintiffs also request an injunction compelling the Defendants to comply with the 2012-2015 CBA or such other collective bargaining agreement as may be entered into in the future. Defendants moved to dismiss the complaint on January 21, 2015, (Doc. No. 5), and Plaintiffs opposed the motion on February 4, 2015. (Doc. No. 7.) Defendants replied the following day. (Doc. No. 8.)

## II.     *Legal Standard*

Defendants move to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the factual allegations in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When considering a motion to dismiss pursuant to Rule 12(b)(6), courts "consider only the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004), *abrogated in part on other grounds, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The court must "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A court need not, however, take as true "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp.*, 643 F.3d at 84 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 210-11 (citation omitted). "This does not impose a probability requirement at the pleadings stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 n.3).

### III.   Discussion

Defendants challenge Plaintiffs' assertion that they are bound by the 2012-2015 CBA between the IFCA and the Union. (Compl. Ex. 1, Art. of Agreement.) It is undisputed that neither MRS nor Marion signed the 2012-2015 CBA. (*See* Defs.' Mot. Dismiss 5; Pls.' Opp'n Mot. Dismiss 4.) Plaintiffs instead contend that the 1997 Assent Letter binds MRS to all successive collective bargaining agreements negotiated between IFCA and the Union.

The 2012-2015 CBA created a "section 8(f) relationship," which refers to § 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f), between the Union and the IFCA.[5] Section 8(f) "allows employers engaged primarily in the building and construction industry to enter into pre-hire agreements which contain union security clauses whether or not the union represents a majority of the employer's employees." *Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre*

---

[5] Collective bargaining relationships involving a construction industry employer are presumed to be 8(f) relationships. *Sheet Metal Workers' Intern. Ass'n Local 19 v. Herre Bros., Inc.*, 201 F.3d 231, 240 (3d Cir. 1999). Because Plaintiffs have not challenged this presumption, the Court presumes that the 2012-2015 CBA is an 8(f) relationship.

4

*Bros., Inc.*, 201 F.3d 231, 239 (3d Cir. 1999). These "pre-hire agreements" are enforceable during their term, but upon their expiration, the employer may withdraw recognition from the union, thereby avoiding any obligation to bargain for a successor contract. *Iron Workers Tri-State Welfare Plan*, 530 F. Supp. 2d 1021, 1029 (N.D. Ill. 2008) (citations omitted); *John Deklewa & Sons, Inc.*, 282 N.L.R.B. 1375, 1385 & n.42, 1987 WL 90249 (1987) (holding that § 8(f) agreements are enforceable during the life of the agreement but impose no continuing obligation to bargain following the termination of that agreement).

The NLRB instructed that "an 8(f) employer will be bound by multiemployer bargaining only if it is 'part of the multiemployer unit prior to the dispute' and 'has, by a distinct affirmative action, recommitted to the union that it will be bound by the upcoming or current multiemployer negotiations." *Sheet Metal Workers' Int'l. Ass'n Local 19*, 201 F.3d at 240 (citing *James Luterbach Constr. Co.*, 315 N.L.R.B. 976, 980, 1994 WL 715997 (1994)). This rule is designed to protect an employer's right to bargain for itself and an employer's right to refuse to bargain for a successor contract. *James Luterbach Constr. Co.*, 315 N.L.R.B. at 980.

Neither element of *Luterbach* is satisfied here. The parties agree that MRS was not a member of the IFCA—the multiemployer bargaining unit—prior to the dispute giving rise to this case. (Defs.' Mot. Dismiss 8; Pls.' Opp'n Mot. Dismiss 4.) The Court need not consider the second element of the *Luterbach* test because it is necessary only if the "first inquiry is answered affirmatively." *Luterbach*, 315 N.L.R.B. 976, 980. Nonetheless, the second element also fails. The employer must have engaged in a "*distinct* affirmative action that would reasonably lead the union to believe that the employer intended to be bound by the upcoming or current negotiations." *Id.* (emphasis added). Plaintiffs attach, without reference, the 1997 Assent Letter to their complaint as part of the "Labor Contract." This letter is not a *distinct* affirmative act

reflecting MRS' consent to be bound by a future collective bargaining agreement. *See id.* ("[M]ere inaction by an employer during multiemployer negotiations is not sufficient to show that an 8(f) employer has reaffirmed its intention to be bound by the results of multiemployer bargaining."); *accord Iron Workers Tri-State Welfare Plan*, 530 F. Supp. 2d at 1034 ("[A] union cannot rely on a firm's mere inaction to signal its continued participation in the negotiations leading up to the next CBA."). The complaint does not describe any other actions taken by MRS that demonstrate an intent to be bound by the 2012-2015 CBA.

Because MRS is not bound under *Luterbach*, Plaintiffs must point to some other evidence of MRS' willingness to be bound by the 2012-2015 CBA. *See* 29 U.S.C. § 158(b)(1)(B) ("[I]t shall be an unfair labor practice for a labor organization or its agents to restrain or coerce . . . an employer in the selection of his representative for purposes of collective bargaining."); *Iron Workers Tri-State Welfare Plan*, 530 F. Supp. 2d at 1034 ("[I]n a Section 8(f) relationship . . . the employer is under no continuing obligation to bargain at all, whether independently or as part of a multiemployer unit."). Plaintiffs contend that the plain language of the 1997 Assent Letter binds MRS to the 2012-2015 CBA. In that letter, which is dated August 25, 1997, MRS agreed to be bound by:

> all of the terms and conditions of employment contained in the collective bargaining agreement between the [Union] and the [IFCA] . . . that is effective on the date of this Agreement as well as any additions, modifications, extensions and renewals thereof between the [Union] and IFCA as may occur subsequent to the execution of this Agreement.

(Compl. Ex. 1, 1997 Letter of Assent.) MRS further agreed that:

> This Agreement shall be effective as of the date set forth below and shall remain in full force and effect for the duration of the collective bargaining agreement between the [Union] and [IFCA] that is effective on the date of this Agreement and for the duration of any addition, modification or renewal thereof until one party shall

>provide to the other written notice by certified mail of intent to terminate the then-current agreement at its stated expiration . . .

(*Id.*)  This language binds MRS to the 1997-2001 CBA and any subsequent additions, modifications, extensions, or renewals of that agreement.[6]

There are no allegations in the complaint suggesting that 2012-2015 CBA is a modification, extension, or renewal of the 1997-2001 CBA.  Plaintiffs contend only that MRS "signed the CBA in 1994 and 1997 and never modified, amended or terminated those agreements. [MRS] has agreed, under widely accepted law governing collective bargaining agreements, to be bound by any successor master agreement between the [IFCA] and the Union."  (Pls.' Opp'n Mot. Dismiss 5.)  However, "the fact that an employer chose to bargain a *past* contract on a multiemployer basis does not establish that the employer has agreed to bargain a *successor* contract, much less that the employer has consented to bargain a successor contract on a multiemployer basis."  *Luterbach*, 315 N.L.R.B. at 980-81.  The language of the 1997 Assent Letter does not bind MRS to successive agreements and it does not authorize the IFCA to bargain on MRS' behalf.  *Cf. N.L.R.B. v. Baker*, 105 F.3d 647, *3 (4th Cir. 1997) (unpublished) (holding that employer was bound by a successive collective bargaining agreement because its prior agreement authorized the multiemployer unit "to act as the Company's 'collective bargaining representative for all matters contained in or pertaining to the' § 8(f) agreement between [the multiemployer unit] and the Union"); *Int'l Bhd. of Elec. Workers Local Union No. 654 Health & Welfare Fund v. Indus. Valley Controls, Inc.*, No. 09-cv-5840, 2010 WL 4138565, at *4-7 (E.D. Pa. Oct. 20, 2010) (holding that defendant employer failed to effectively terminate letter of assent

---

[6]  "The interpretation of a collective bargaining agreement or other plan document is typically a question of law.  Where the contract is clear and unambiguous, a court must determine its meaning as a matter of law."  *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 138 (3d Cir. 1999) (citations omitted).

authorizing multiemployer unit to bargain on its behalf and thus plaintiffs could audit defendant pursuant to successive collective bargaining agreement).  Plaintiffs provide no other facts suggesting that Defendants authorized IFCA or the Union to bind it to future agreements.

Plaintiffs try to salvage their claim by alleging, for the first time in their opposition to Defendants' motion, a right to audit MRS pursuant to the 1997-2001 CBA.  The complaint, however, relies solely on the 2012-2015 CBA.  Plaintiffs attached only the 2012-2015 CBA, which they refer to as the "Labor Contract," and they seek to recover against Defendants for their failure to make required contributions "for the period of January 1, 2012 to the present."  (Compl. ¶¶ 1, 16.)  "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Commw. of Pa.* ex rel. *Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).  Plaintiffs cannot, based on this complaint, pursue any rights they purport to have under the 1997-2001 CBA.

## IV.   *Conclusion*

Counts I and II, which seek to enforce the 2012-2015 CBA, are accordingly dismissed.[7]  In Count III, Plaintiffs allege that Defendants' failure to make contributions to the Funds violates ERISA.  Section 1145 provides "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  Because Plaintiffs failed to state a claim that Defendants are bound by the 2012-2015 CBA, they likewise failed to allege that Defendants violated this statute.  Count III is dismissed.  Count IV,

---

[7]   Because Plaintiffs have not alleged that MRS is bound by the 2012-2015 CBA, the Court need not consider whether Marion may be individually liable.

which seeks only an injunction, is dismissed because it does not allege a cause of action.  *See Mulqueen v. Energy Force, LLC*, No. 13-cv-1138, 2013 WL 6051020, at *11 (M.D. Pa. Nov. 14, 2013) ("Claims for injunctive and declaratory relief are remedies and not independent causes of action.").

An appropriate order follows.

<u>/s/ Gerald J. Pappert</u><br>
GERALD J. PAPPERT, J.